Gretchen M. Nelson, SBN #112566
Email: gnelson@nflawfirm.com
Gabriel S. Barenfeld, SBN #224146
Email: gbarenfeld@nflawfirm.com
NELSON & FRAENKEL LLP
601 South Figueroa Street, Suite 2050
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GWENDOLYN BECK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZESTFINANCE, INC., BLUECHIP FINANCIAL, and DOUGLAS MERRILL,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violations of Tex. Fin. Code & 18 U.S.C. § 1962 (RICO)**<br><br>**(JURY TRIAL DEMANDED)** |

1

CLASS ACTION COMPLAINT

Plaintiff Gwendolyn Beck ("Plaintiff"), by and through her attorneys, on behalf of herself and all others similarly situated, brings the following class action Complaint against ZestFinance, Inc., BlueChip Financial, and Douglas Merrill (collectively, "Defendants") for engaging in a scheme to make usurious loans in violation of Texas law and the laws of many other states.

## GENERAL ALLEGATIONS

1. This is a case about a scheme to make online short-term loans (commonly called "payday loans") that carry triple-digit interest rates, often exceeding 400%, and are illegal in many states, including Texas.

2. Payday loans often target vulnerable borrowers and, left unregulated, can economically devastate borrowers and their communities. Consumers often renew the loans or take out new loans when they are unable to pay their original loans off, creating a cycle of mounting debt.

3. In recent years, payday lenders have concocted various schemes to make high-interest loans over the internet while avoiding state usury laws.

4. In one scheme — the so-called "rent-a-bank" strategy — payday lenders convinced banks headquartered in states with high (or nonexistent) usury limits to form a lending venture in order to capitalize on the fact that the bank was obligated to comply only with the usury law of its home state, even for loans made elsewhere.

5. Federal banking regulators shut down these "rent-a-bank" schemes. Michael A. Stegman, *Payday Lending*, 21 JOURNAL OF ECONOMIC PERSPECTIVES 169, 178-9 (2007) (describing rent-a-bank scheme and regulatory reaction).

6. Some payday lenders have since developed a new method to attempt to avoid state usury laws—the "rent-a-tribe" scheme.

7. In a rent-a-tribe scheme, the payday lender — which does most of its lending over the internet — affiliates with a Native American tribe to attempt to insulate itself from federal and state law by piggy-backing on the tribe's sovereign legal status and its general immunity from suit under federal and state laws.

8. Like its predecessors, this scheme is doomed to fail, because even a cursory examination of the underlying relationship between the payday lender and the tribe demonstrates that the relationship is insufficient to permit the lender to avail itself of the tribe's immunity.

9. Rent-a-tribe schemes are not designed to promote tribal business but instead are contrivances aimed at avoiding state usury law, with the vast majority of the revenues going to non-tribal entities.

10. In recent years, these rent-a-tribe schemes have come under increasing scrutiny from regulators, with one prominent perpetrator convicted and sentenced to 16 years in prison related to federal racketeering and truth-in-lending laws.[1]

11. This case is about such a rent-a-tribe scheme. In this case, non-tribal entities ZestFinance and Douglas Merrill provided the capital, marketing, underwriting, and other resources for BlueChip Financial dba Spotloan ("BlueChip"), a purported tribal entity in North Dakota that makes usurious loans to Texas residents and to persons located throughout the United States.

12. Neither ZestFinance nor BlueChip are licensed by the Texas Office of Consumer Credit Commissioner, which regulates lenders that offer consumer loans with rates of interest greater than 10%. *See* https://occc.texas.gov/industry.

---

[1] *See* The United States Attorney's Office, Southern District of New York, *Scott Tucker Sentenced To More than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise* (Jan. 8, 2018), https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday.

2
CLASS ACTION COMPLAINT

13. Nevertheless, Defendants have and continue to make, and collect on, usurious loans with Texas residents.

14. Plaintiff, on behalf of herself and the Texas Class set forth below, seeks to recover damages and penalties for the usurious interest and fees charged by Defendants to Texas residents.

15. Plaintiff also seeks to recover damages on behalf of herself and the RICO Class set forth below.

## THE PARTIES

16. Plaintiff Gwendolyn Beck is a natural person and a resident of Houston, Texas.

17. Defendant Douglas Merrill is a natural person residing in California.

18. Defendant ZestFinance, Inc. is a Delaware corporation, headquartered in Los Angeles, California.

19. Defendant BlueChip Financial dba Spotloan is purportedly a tribal corporation located in Belcourt, North Dakota, and incorporated under the laws of the Turtle Mountain Band of Chippewa Indians.

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over Plaintiff's Racketeer Influenced and Corrupt Organizations ("RICO") claims under 18 U.S.C. § 1962, and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

21. This Court also has jurisdiction under the Class Action Fairness Act as Plaintiff is a citizen of Texas, and none of the Defendants are a resident of that state, the matter in controversy exceeds $5,000,000, and there are at least 100 members of each Class.

3
CLASS ACTION COMPLAINT

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. At least one Defendant resides in this District, and witnesses and documents relevant to this matter are located in this District.

## TEXAS USURY LAW

23. Subject to limited exceptions, the maximum rate of interest allowed in Texas is 10%. Tex. Fin. Code § 302.001.

24. Texas law requires persons issuing consumer loans to obtain a license. Tex. Fin. Code § 342.051. Licensees may exceed the 10% maximum interest rate for consumer loans not secured by real property, depending on the type of loan, and subject to calculations made by the Consumer Credit Commissioner. *Id.* § 342.201.

25. Lenders who charge more than 10% in interest in violation of Texas Financial Code are liable for the greater of (1) three times the amount of interest charged in excess of 10%, or (2) the lesser of $2,000, or 20% of the principal. Tex. Fin. Code § 305.001.

26. Additionally, if the interest charged and received is more than twice the permissible amount, the lender will be held liable for the principal amount, the interest, and any other charges or fees. Tex. Fin. Code § 305.002.

27. Defendants were never licensed to make loans to Texas consumers.

## DEFENDANTS' SCHEME TO AVOIDE USURY LAWS

28. Defendants operate a rent-a-tribe scheme that charges up to 490% annual interest on short term loans. *See* www.spotloan.com/how-spot-loans-work.

29. In 2009, former Google Chief Information Officer Douglas Merrill founded ZestFinance, which was then known as ZestCash, and which is now known as Spotloan.

30. ZestFinance wants to "reinvent[] the process of giving loans" and "to apply Google-like math to reinvent how credit decisions are made." *See* www.zestfinance.com/our-team.

4
CLASS ACTION COMPLAINT

31. ZestCash, using its proprietary underwriting software, began making high-interest loans over the internet.

32. By mid-2012, ZestCash was rebranded as "Spotloan."

33. In an effort to avoid state usury laws, in 2012, Merrill and ZestFinance affiliated with the Turtle Mountain Band of Chippewa Indians (the "Tribe") located in Belcourt, North Dakota.

34. At the direction of Merrill and ZestFinance, a tribal entity, BlueChip Financial, was created to serve as a front to disguise ZestFinance and Merrill's role in making usurious loans.

35. BlueChip immediately began making loans using the "Spotloan" tradename.

36. Under the scheme, loans are made in the name of "Spotloan c/o BlueChip Financial," but ZestFinance and Merrill provide the infrastructure to market, fund, underwrite, and collect on the loans, including the underwriting software.

37. ZestFinance and Merrill have received significant financing from Victory Park Capital Advisors, a hedge fund that has funded other rent-a-tribe payday lending schemes.[2]

38. The primary lending and collection operations of BlueChip are not operated on tribal land or on tribal property. For example, payments on the loans are not made to BlueChip on tribal lands, but instead are sent to a PO Box located in Palatine, Illinois. Further, BlueChip's CEO works in San Diego, California.

39. The Tribe has little or no control over how the loans are financed or underwritten. ZestFinance provides all of the underwriting services for the loans.

---

[2] *See* www.foxbusiness.com/features/think-finance-bankruptcy-exposes-fallout-with-victory-park-capital.

5
CLASS ACTION COMPLAINT

40. The Tribe receives only about 1% of the profits from the lending activities while 99% of the profits go to ZestFinance and other non-tribal entities.

41. Despite not being operated or controlled by the Tribe, Defendants purport to represent to consumers that state laws designed to protect consumers from usurious loans do not apply to their loans from Defendants. For example, Defendants' form loan agreements state that: "By signing this Loan Agreement, you agree that the laws of the Tribe will apply to the Loan Agreement, and understand that United States state law does not apply to the Loan Agreement in any way."

42. This scheme has been very successful. Defendants have made over 500,000 loans since 2012.

43. In 2016, BlueChip was ordered to cease and desist from lending in Illinois by the Illinois Department of Financial and Professional Regulation for not having a license to lend in Illinois.[3]

44. In 2017, the Washington Department of Financial Institutions issued a warning to consumers that BlueChip was not licensed in the state of Washington or registered to conduct business in Washington.[4]

## ALLEGATIONS RELATING TO PLAINTIFF

45. On or around March 16, 2016, while living in Texas, Plaintiff took out a loan through www.spotloan.com.

46. The principal amount on the loan was $400.00, and the interest rate was 450%. The loan required eight (8) payments of about $140.68. Plaintiff paid the loan off by November 1, 2016, paying a total of $1,116.23.

47. In or around August 2017, while living in Texas, Plaintiff took out a second loan through www.spotloan.com.

---

[3] *See* www.idfpr.com/DFI/CCD/Discipline/BluechipFinancialCDOrder.pdf.
[4] *See* www.dfi.wa.gov/consumer/alerts/bluechip-financial-not-licensed-washington.

48. The principal amount on the loan was $600.00, and the interest rate was in excess of 450%. Plaintiff settled the loan in August 2018, having paid a total of $2,884.45 by that date.

49. As part of both loan applications, Plaintiff provided her Texas address.

## CLASS ALLEGATIONS

50. Plaintiff asserts her claims individually and on behalf of the proposed Texas Class defined as follows:

> All Texas residents from whom Defendants collected or attempted to collect loans and/or who engaged in a loan transaction with Defendants in the four years preceding the filing of this complaint to the date that the class list is created.

53. Plaintiff asserts her claims on behalf of the proposed RICO Class defined as follows:

> All United States residents from whom Defendants collected or attempted to collect loans and/or who engaged in a loan transaction with Defendants in the four years preceding the filing of this complaint to the date that the class list is created.

54. At this time, Plaintiff does not know the exact number of members of the Classes, however, given the volume of Defendants' business, there are likely thousands of members of each Class. Thus, the Classes are so numerous that joinder of all members is impracticable.

55. There are numerous common questions of law and fact common to Plaintiff and the members of the Classes. These questions include, but are not limited to, the following:

　　(a) Whether Defendants violated Texas usury laws;

　　(b) Whether Defendants are protected by tribal sovereign immunity;

　　(c) Whether Defendants engaged in unfair or deceptive acts or practices;

7
CLASS ACTION COMPLAINT

  (d) Whether Defendants' unfair or deceptive acts or practices affected the public interest;

  (e) Whether Defendants' unfair or deceptive acts or practices caused injury to property;

  (f) Whether Defendants violated RICO by charging interest rates more than twice the legal limit under state law;

  (g) The proper measure and amount of damages for the Classes.

51. Plaintiff's claims are typical of the claims of the Classes. Plaintiff, like members of the Classes, took out usurious loans from Defendants. Thus, Plaintiff's claims, like the claims of the Classes, arise out of the same common practices of conduct by Defendants and are based on the same legal and remedial theories.

52. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has competent and capable attorneys who are experienced trial lawyers with significant experience litigating complex class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel have interests that conflict with the Classes.

53. The Classes meet the requirements for certification to obtain injunctive or equitable relief under Fed. R. Civ. P. 23(b)(2), as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole. Prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendants.

54. The Classes meet the requirements for certification to seek monetary relief under Fed. R. Civ. P. 23(b)(3), as the questions of law or fact common to class

members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Additionally, individual actions may be dispositive of the interests of members of the Classes even though certain members of the Classes are not parties to such actions. Further, a class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

(a) Absent a class action, class members as a practical matter, will be unable to obtain redress; Defendants' violations will continue without remedy; and additional consumers will be harmed.

(b) It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions.

(c) A class action will permit an orderly and expeditious administration of class claims and foster economies of time, effort, and expense.

(d) The lawsuit presents no difficulties that would impede its management by the Court as a class action.

(e) Defendants have acted on grounds generally applicable to class members, making class-wide relief appropriate.

## COUNT I
### Violation of RICO, 18 U.S.C. §§ 1962(c) & (d)
*Asserted on behalf of Plaintiff and the RICO Class*

55. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56. Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1964(3).

57. The Enterprise, consisting of each named Defendant and the unnamed officers, executives, and other employees of BlueChip and ZestFinance, are in fact an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), associated for the

common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers throughout the United States through the online lender Spotloan.

58. The Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

59. Defendants violated § 1962(c) of RICO by participating, directly or indirectly, in the conduct of the Enterprise's affairs in the collection of unlawful debt.

60. RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

61. All of the loans made to Texas residents and collected by Defendants included an interest rate far in excess of twice the enforceable rate in Texas. Further, Defendants' loans to RICO Class members included interest rates in excess of twice the enforceable rate under other applicable states' laws.

62. Defendants also violated 18 U.S.C. § 1962(d) by conspiring to use the Enterprise to collect unlawful debt. Each Defendant knowingly agreed to participate in the scheme alleged herein that allowed the Enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under state usury laws.

63. Plaintiff and the RICO Class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the Enterprise.

64. This conduct began sometime in 2012, continues to date, and will be repeated again and again in the future, to the detriment of Texas consumers, and consumers nationwide.

CLASS ACTION COMPLAINT

65. Accordingly, Defendants are jointly and severally liable to Plaintiff and the RICO Class for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II
### Violations of Texas Usury Law
*Asserted on behalf of Plaintiff and the Texas Class*

66. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. Under Texas law, "[a] greater rate of interest than 10 percent a year is usurious unless otherwise provided by law." Tex. Fin. Code § 302.001(b).

68. A person who makes consumer loans and charges interest at a rate higher than 10% is required to hold a license. Tex. Fin. Code §§ 342.005, .051.

69. All of the loans made to Plaintiff and the Texas Class members were well in excess of the 10% maximum rate allowed under Texas law.

70. At no time were Defendants licensed to make consumer loans or to collect or receive payments on consumer loans in the state of Texas.

71. Defendants' conduct was not the result of an accidental and bona fide error but instead was a deliberate, willful, and intentional scheme to circumvent Texas law, and to collect interest at rates well in excess of that allowed by the law.

72. Accordingly, Plaintiff and the Texas Class members are entitled to the greater of (1) three times the interest charged in excess of 10%, or (2) the lesser of $2,000 or 20% of the principal. Tex. Fin. Code § 305.001.

73. Additionally, because Defendants charged Plaintiff and the Texas Class members interest at a rate twice the amount authorized by Texas law, Plaintiff and the Texas Class members are also entitled to recover the principal amount of the loan, interest, and any other charges or fees. Tex. Fin. Code § 305.002.

74. Alternatively, even if Defendants could take advantage of the higher interest rates permitted under Tex. Fin. Code § 342, *et seq.*, Defendants charged

11
CLASS ACTION COMPLAINT

Plaintiff and the Texas Class members interest in excess of the amount authorized by that law.

75. Accordingly, Plaintiff and the Texas Class members are entitled to twice the amount of interest Defendants charged or received, and reasonable attorneys' fees. Tex. Fin. Code § 349.001(a). Additionally, because Defendants charged Plaintiff and the Texas Class members interest at a rate twice the amount authorized by Texas law, Plaintiff and the Texas Class members are entitled to the principal balance in addition to interest. Tex. Fin. Code § 349.002.

## COUNT III
### Unjust Enrichment
*Asserted on behalf of Plaintiff and the Texas Class*

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77. To the detriment of Plaintiff and the Texas Class members, Defendants have been, and continue to be, unjustly enriched as a result of charging and collecting illegal, usurious interest rates.

78. As between the parties, it would be unjust for Defendants to retain the benefits attained by their actions. Accordingly, Plaintiff seeks a full accounting and restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a) An Order certifying the proposed Classes under Fed. R. Civ. P. 23(b)(2) and (b)(3), and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

(b) An Order declaring that Defendants are financially responsible for notifying members of the Classes of the pendency of this suit;

(c) An Order declaring that Defendants have committed the violations of law alleged herein;

(d) An Order providing for any and all injunctive relief the Court deems appropriate;

(e) An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury;

(f) An Order awarding treble damages in accordance with proof and in an amount consistent with applicable precedent;

(g) An Order awarding interest at the maximum allowable legal rate on the foregoing sums;

(h) An Order awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees; and

(i) Such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: March 15, 2019          NELSON & FRAENKEL LLP

By: /s/ Gretchen M. Nelson, SBN #122566
Gretchen M. Nelson, SBN #112566
Email: gnelson@nflawfirm.com
601 South Figueroa Street, Suite 2050
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray*
Email: jmurray@terrellmarshall.com
Elizabeth A. Adams, SBN #290029
Email: eadams@terrellmarshall.com

13
CLASS ACTION COMPLAINT

|   |   |
|---|---|
| 1 | TERRELL MARSHALL LAW |
| 2 | GROUP PLLC |
|   | 936 North 34th Street, Suite 300 |
| 3 | Seattle, Washington 98103 |
|   | Telephone: (206) 816-6603 |
| 4 | Facsimile: (206) 319-5450 |

*pro hac vice* application forthcoming

*Attorneys for Plaintiff*

14

CLASS ACTION COMPLAINT